IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTHONY TYRONE JACKSON,

           **Plaintiff,**

     v.                                                       CASE NO. 25-3090-JWL

ALEXANDER R. OWENS, ET AL.,

           **Defendants.**

**MEMORANDUM AND ORDER**

This matter is a pro se civil rights action under 42 U.S.C. § 1983 brought by Plaintiff and state prisoner Anthony Tyrone Jackson, who is housed at Lansing Correctional Facility (LCF) in Lansing, Kansas. Plaintiff has been granted leave to proceed without prepayment of the filing fee. The Court has reviewed the complaint and identified deficiencies that are set forth below and that leave portions of the complaint subject to dismissal. The Court will grant Plaintiff time in which to show cause, in writing, why those portions should not be dismissed or, in the alternative, to file a complete and proper amended complaint that cures the deficiencies identified herein. If Plaintiff fails to do so in the allotted time, the portions of this matter identified below will be dismissed without further prior notice to him.

    I.    **Nature of the Matter before the Court**

Although Plaintiff is currently housed at LCF, the events that led to this case occurred while he was housed at El Dorado Correctional Facility (EDCF) in El Dorado, Kansas. Plaintiff names as Defendants in this matter EDCF Correctional Officer Alexander R. Owens, EDCF Correctional Officer Sergeant 1 Philip C. Marley, and EDCF Unit Team Travis Reynolds. (Doc. 1, p. 1.) Plaintiff sues each Defendant in his individual and official capacities. *Id.* at 1-3.

As the background of this case, Plaintiff alleges that between 7:00 and 8:00 p.m. on May 12, 2024, he was involved in an altercation with at least 28 other inmates at EDCF. *Id.* at 3. After the altercation, Plaintiff was confined to his cell in EDCF general population until the following morning, when he was taken to the strip-out cages in B-1 cell house. *Id.* There, correctional officers told Plaintiff they intended to place him into a cell with another general population inmate with whom Plaintiff "had serious issues." *Id.* at 3-4. Plaintiff does not remember the inmate's name, but alleges that he and the other inmate had a history of verbal and physical altercations. *Id.* at 7. In one of the grievances attached to the complaint, Plaintiff states his belief that the inmate's last name "was something like 'Mathias.'" *Id.* at 9. Thus, for ease of understanding, this memorandum and order will refer to the other inmate as "Inmate M."

Plaintiff told Defendant Reynolds and another correctional officer that he did not feel safe being assigned to a cell with Inmate M, and Plaintiff refused the officers' efforts to persuade him to accept the cell assignment. *Id.* at 4. Plaintiff alleges that in retaliation, he was asked to cuff up and he was escorted to the programs room. *Id.* The only furniture in the programs room was a desk and a stool; there was no running water, no toilet, no raised sleeping area, no mattress, and no bedding. *Id.* The Defendants refused to provide dinner or breakfast to Plaintiff. *Id.* When Plaintiff asked for access to a toilet, water, and bedding, Defendants told him that his choices were to accept the conditions in the programs room or go to a cell with Inmate M. *Id.*

Plaintiff refused to go to the cell, so Defendants left. *Id.* For 24 hours in the programs room, Plaintiff had no access to water, food, a mattress, bedding, or a toilet. *Id.* He slept on the cold floor of the programs room until the following morning, May 14, 2024. *Id.* At approximately 8:00 or 9:00 a.m., he was escorted from the programs room to a suicide cell in another cell house and, that evening, he was escorted to a cell in B-1 cell house. *Id.*

As Count I, Plaintiff alleges that Defendant Owens violated his rights to due process under the Fifth and Fourteenth Amendments to the United State Constitution. *Id.* at 5. Plaintiff has left blank the portion of the form complaint designated for stating the facts that support Count I. *Id.* However, the complaint and attachments submitted consist of 19 pages and it appears that one or more of the unnumbered pages may be intended to elaborate further on Count I. (Doc. 1-1, p. 3-4.) The Court liberally construes the pro se complaint, but Petitioner is advised that if he chooses to file an amended complaint in this matter, he should number all of the pages he submits for filing or otherwise ensure that the intended order of those pages is clear.

Liberally construed, Count I alleges that each of the three named Defendants individually violated Plaintiff's Fifth and Fourteenth Amendment Due Process rights. (Doc. 1, p. 5; Doc. 1-1, p. 3-4.) Plaintiff asserts in Count I that Defendants acted in concert to punish Plaintiff for refusing a cell assignment with Inmate M by placing him into the programs room, where he had no access to food, running water, a mattress, a bedroll, or a toilet. *Id.* Plaintiff contends that placing him in the programs room "was purely punitive in nature" and that there was no legitimate reason to place him in the programs room. *Id.* Plaintiff further points out that he was never issued a disciplinary report for refusing to be housed with Inmate M. *Id.*

As Count II, Plaintiff alleges that Defendant Owens and Defendant Marley violated the Eighth Amendment's prohibition of cruel and unusual punishment. (Doc. 1, p. 5-6.) As supporting facts for Count II, Plaintiff states that "Defendant Owens [and Defendant Marley] worked in concert with other defendants to deprive the Plaintiff of basic amenities, food, water, toilet, bedding, mattress for 24 hours, forcing the plaintiff to not only hold his bodily waste, but to sleep on the cold floor." *Id.* at 5-6.

Plaintiff further asserts that he told both Defendant Owens and Defendant Marley that

placing him in a cell with Inmate M would lead to a physical confrontation. *Id.* at 5-6. Yet when Plaintiff asked Defendant Owens to use the toilet and for water, Defendant Owens replied, "'If you want these things you have to move into that cell with that inmate.'" *Id.* at 5. Similarly, Plaintiff alleges that when he asked Defendant Marley to use the toilet and for water, Defendant Marley replied, "'If you want water and to use the toilet you have to go to the cell with that inmate.'" *Id.* at 6. Plaintiff contends that these statements demonstrate Defendants Owens and Marley's retaliatory intent. *Id.*

On another, unnumbered page, however, Plaintiff identifies Count II as claiming that Defendant Reynolds violated Plaintiff's Eighth Amendment rights by retaliating against Plaintiff. (Doc. 1-1, p. 4.) This claim mirrors the claims against Defendants Owens and Marley that are brought in Count III, discussed below.

As Count III, Plaintiff asserts that Defendant Owens and Defendant Marley violated Plaintiff's Eighth Amendment rights by retaliating against him and trying to force him to accept a cell placement with Inmate M. *Id.* at 6-7. Liberally construing the complaint, it appears Plaintiff may intend to assert that the intended cell placement was punishment for Plaintiff's involvement in the May 12, 2024 incident. Plaintiff argues that instead of writing a disciplinary report on Plaintiff, Defendant Owens and Defendant Marley attempted to punish Plaintiff by forcing him into a dangerous situation in a cell with Inmate M. *Id.* at 6-7. As relief, Plaintiff seeks an injunction ordering facility management to stop retaliatory cell placements; punitive damages of $20,000.00; compensatory damages of $20,000.00; and the payment of his court fees. *Id.* at 8.

II.  **Screening Standards**

Because Plaintiff is a prisoner and proceeds without prepaying the filing fee, the Court is required by statute to screen his complaint and to dismiss it or any portion thereof that is frivolous,

fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). During this screening, the Court liberally construes this pro se complaint and holds it to "less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted.)

The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct,

much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 570).

### III. Discussion

#### A. Rule 8

Rule 8 of the Federal Rules of Civil Procedure[1] requires that a complaint "contain . . . a short and plain statement of the claim showing that [the plaintiff] is entitled to relief." The purpose of Rule 8 "is 'to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief.'" *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1998) (quoting *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1371 (10th Cir. 1979)). Even liberally construing the pro se complaint, the Court cannot determine the precise basis of all of the claims alleged therein. Thus, the complaint would not give opposing parties fair notice of the basis of the claim or claims against them.

##### 1. Count I

Count I of the complaint asserts that each of the three named Defendants violated Plaintiff's constitutional rights to due process. But Plaintiff does not make clear whether he is asserting procedural due process claims or substantive due process claims and even liberally construing the complaint does not clarify the matter.

> "Our first task in any § 1983 suit alleging a constitutional violation is 'to isolate the precise constitutional violation with which [the defendant] is charged.'" *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) (alteration in original) (quoting *Baker v. McCollan*, 443 U.S. 137, 140, 99 S. Ct. 2689, 61 L.Ed.2d 433

---

[1] The Federal Rules of Civil Procedure apply to suits brought by prisoners. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Pro se litigants must "follow the same rules of procedure that govern other litigants." See *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007); *McNeil v. United States*, 508 U.S. 106, 113 (1993) (federal rules apply to all litigants, including prisoners lacking access to counsel).

(1979)). After all, "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989) (quoting *Baker*, 443 U.S. at 144 n.3, 99 S. Ct. 2689). As a result, not all "claims brought under § 1983 are governed by a single generic standard." *Graham*, 490 U.S. at 393, 109 S. Ct. 1865. Instead, we must judge the "validity of the claim ... by reference to the specific constitutional standard which governs that right." *Id.* at 394, 109 S. Ct. 1865.

*Geddes v. Weber County*, 2022 WL 3371010, *3 (10th Cir. 2022) (unpublished) (some internal citations omitted).

Regarding due process, the United States Supreme Court has explained:

"[T]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974), whether the fault lies in a denial of fundamental procedural fairness, see, *e.g., Fuentes v. Shevin,* 407 U.S. 67, 82 (1972) (the procedural due process guarantee protects against "arbitrary takings"), or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective, see, *e.g., Daniels v. Williams,* 474 U.S. [327], 331 [(1986)] (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised). . . .

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).

If Plaintiff intends to bring a *procedural* due process claim against each Defendant in Count I, he must allege sufficient facts to demonstrate that each Defendant denied him the procedural fairness to which he was due. "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Merrifield v. Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011) (citation omitted).

7

On the other hand, if Plaintiff intends to pursue a *substantive* due process claim against each Defendant in Count I, he must allege governmental misconduct by each Defendant that is outrageous enough to shock the conscience. *See United States v. Kennedy*, 225 F.3d 1187, 1194 (10th Cir. 2000). Plaintiff "must do more than show that [each Defendant] intentionally or recklessly caused injury to [him] by abusing or misusing government power." *See Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). Rather, he "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* "[O]nly the most egregious official conduct meets this standard." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

Count I fails to comply with Rule 8 because it leaves the Court unable to determine the precise basis of the claims alleged therein and it would not give opposing parties fair notice of the basis of the claim or claims against them. When a plaintiff fails to comply with Rule 8, this Court is authorized to dismiss the complaint or the claims therein that do not comply with Rule 8. *See Nasious* v. *Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162 n.3 (10th Cir. 2007); *Chavez v. Huerfano County*, 195 Fed. Appx. 728, 730 (10th Cir. 2006) (unpublished) (affirming dismissal without prejudice for violation of Rule 8 and stating that "[i]t is not the role of the court to sort through a lengthy complaint to construct the plaintiff's case"); *Triplett v. U.S. Dept. of Defense*, 2011 WL 1113551 (D. Kan. March 24, 2011) (unpublished). Rather than immediately imposing such a harsh consequence, however, the Court will allow Plaintiff an opportunity to amend his complaint to clearly set forth the basis for his claims in this matter.

 2. **Counts II and III**

Plaintiff's articulation of Counts II and III also is confusing. One part of the complaint indicates that Count II asserts claims that Defendants Owens and Marley violated the Eighth

Amendment's prohibition against cruel and unusual punishment, while another part of the complaint indicates that Count II asserts a claim that Defendant Reynolds unconstitutionally retaliated against Plaintiff in violation of the Eighth Amendment. (*Compare* Doc. 1, p. 5-6 *with* Doc. 1-1, p. 4.) Count III alleges similar retaliation by Defendants Owens and Marley, again in violation of the Eighth Amendment, so any claim of retaliation by Defendant Reynolds appears more appropriately brought as part of Count III, not as part of Count II. (*See* Doc. 1, p. 6-7.)

To the extent that Plaintiff argues in Count II that Defendants Owens and Marley subjected him to unconstitutional cruel and unusual punishment, he has stated a plausible claim for relief. With respect to the retaliation claims brought against Defendant Reynolds in Count II and against Defendants Owens and Marley in Count II, however, it is unclear whether Plaintiff intends to argue that he was retaliated against for refusing to accept a cell assignment with Inmate M; that he was retaliated against for being involved in the May 12, 2024 fight with other inmates; or both. In addition, the complaint does not make clear how the alleged retaliation violated the Eighth Amendment. The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Its plain language does not refer to retaliation, nor has Plaintiff explained how the Eighth Amendment protects him from retaliation.

The Tenth Circuit has recognized that "[t]he existence of an improper motive for disciplining a prisoner which results in interference with a constitutional right may also give rise to a . . . separate cause of action under § 1983." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). It could be that Plaintiff intended to make this sort of argument: that his placement in the programs room was discipline that interfered with his Eighth Amendment right to be free from cruel and unusual punishment. But even liberally construed, the facts alleged in the complaint do

not support a plausible claim that Plaintiff's placement in the programs room was "discipline."

Plaintiff's placement in the programs room followed a large-scale incident of a physical altercation involving at least 29 inmates at EDCF. Moreover, in a grievance attached to the complaint, Plaintiff says he initially agreed to go to the programs room "because they said they needed to get more inmates in the strip out cage." (Doc. 1, p. 9.) In another grievance, Plaintiff describes an exchange in which a correctional officer asked him to "at least bunk with [Inmate M] for a day or two then they would try to move [Plaintiff] with a more compatible [i]nmate." (Doc. 1-1, p. 1.) When Plaintiff refused, a correctional officer said they would "put [Plaintiff] in the programs room until they could find [him] another cell to go to." *Id.* It is not plausible, in light of these facts, to conclude that Plaintiff's placement in the programs room was a form of discipline. Rather, it seems to be a placement of necessity in the aftermath of a multiple-inmate fight, a lack of space, and Plaintiff's refusal to accept the offered cell placement.

Finally, Plaintiff may have intended to bring a claim of unconstitutional retaliation and not necessarily rely upon the Eighth Amendment. But "[m]ere allegations of constitutional retaliation will not suffice; [he] must rather allege specific facts showing retaliation because of the exercise of [his] constitutional rights.'" *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (citation omitted). Plaintiff "'must prove that "but for" the retaliatory motive, the incidents to which he refers . . . would not have taken place.'" *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citation omitted). Plaintiff "must allege more than his personal belief that he is the victim of retaliation." *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999); *Brown v. Sales*, 134 F.3d 382, 1998 WL 42527, *3 (10th Cir. Feb. 4, 1998) (citing an earlier Fifth Circuit decision holding the same). Again, based on the facts alleged as detailed above, Plaintiff has not alleged more than his personal belief that his placement in the programs room was retaliatory. He has not alleged

facts that support the conclusion that "but for" a retaliatory motive, he would not have been placed in the programs room.

Relatedly, to plead a claim of unconstitutional retaliation, a plaintiff must show that the retaliatory action was "substantially motivated" by the plaintiff engaging in a constitutionally protected activity. *See id.* ("Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts."); *See Lozman v. Riviera Beach*, 585 U.S. 87, 95 (2018) (describing the plaintiff's First Amendment claim of retaliatory arrest allegedly ordered because of "earlier, protected speech" by the plaintiff). Plaintiff has not identified a constitutionally protected activity that led to the allegedly retaliatory attempts to place Plaintiff into a cell with Inmate M.[2] Thus, Plaintiff has failed to state a plausible retaliation claim in Count III and in the portion of Count II that alleges retaliation by Defendant Reynolds. These claims, therefore, are subject to dismissal

**B. Relief Requested**

Plaintiff seeks compensatory damages for pain and suffering. The Prison Litigation Reform Act (PLRA) provides in part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). As used in the PLRA, "prisoner" includes is "any person incarcerated or detained in any facility who is accused of . . . violations of criminal law." 42 U.S.C. § 1997e(h). This provision of the PLRA "limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). Simply put,

---

[2] Plaintiff seems to assert that placing him in the programs room was an attempt to force him into a dangerous situation involving Inmate M and that this attempt was prompted by Plaintiff's involvement in the May 12 fight that involved at least 28 other inmates. Engaging in a large-scale physical altercation in prison is not a constitutionally protected activity.

without "a prior showing of physical injury or the commission of a sexual act," a prisoner plaintiff may not obtain compensatory damages. *Id.* at 878. Thus, Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e) because Plaintiff has failed to allege a physical injury.

Plaintiff's request for injunctive relief is moot. Plaintiff is no longer confined at EDCF; he is currently housed at LCF. Because Plaintiff's request relates solely to alleged wrongdoing on the part of EDCF employees, the Court would be unable to provide Plaintiff with effective relief and his requests for injunctive relief are moot. Article III of the Constitution extends the jurisdiction of federal courts only to "live, concrete" cases or controversies. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds.* Consequently, "[m]ootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande*, 601 F.3d at 1109 (internal quotations and citations omitted).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 1974). The Tenth Circuit has applied this principle to § 1983 actions brought by inmates, and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement. *See Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's

release from prison mooted his § 1983 claim for injunctive relief). The mootness doctrine is based on the reality that even if the inmate receives injunctive relief, the defendants from the former prison would be unable to provide the relief to the plaintiff. Because Plaintiff is no longer in custody at EDCF, his claims for injunctive relief are moot and subject to dismissal.

Finally, "[s]ection 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 27, 30 (1991)). This is because "[t]he Eleventh Amendment precludes anyone from suing an arm of the state or asserting a damage claim against state officers in their official capacities." *See Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017). Thus, Plaintiff's request for money damages from Defendants in their official capacities is subject to dismissal.

## IV. Conclusion

For the reasons set forth above, Count I, Count III, and the retaliation claim against Defendant Reynolds in Count II are subject to dismissal under Rule 8. Additionally, Plaintiff's request for injunctive relief is subject to dismissal as moot, his request for compensatory damages is barred by 42 U.S.C. § 1997e(e), and his request for money damages from Defendants in their official capacities is barred by the Eleventh Amendment. Put another way, the only claims in the current complaint that survive the statutorily required screening of this matter are the claims in Count II that Defendants Owens and Marley violated Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment by conditioning his release from the programs room—which lacked basic amenities such as water, a toilet, and bedding and in which Plaintiff could not receive food—on agreement to be housed in a cell with an inmate with whom Plaintiff had a history of verbal and physical altercations and with whom Defendants Owens and Marley knew Plaintiff felt

unsafe. The only request for relief that survives screening is for punitive damages against Defendants Owens and Marley in their individual capacities.

Plaintiff will be granted time in which to show cause, in writing, why the Court should not dismiss Defendant Reynolds from this action; dismiss Counts I and III of this action; and dismiss Plaintiff's requests for injunctive relief and compensatory damages, as well as his request for money damages from the remaining Defendants in their official capacities. In the alternative, Plaintiff may file a complete and proper amended complaint upon the required, court-approved form that cures all the deficiencies discussed herein.

If Plaintiff chooses to file an amended complaint, he is advised that an amended complaint does not supplement the current complaint. Rather, an amended complaint completely replaces the initial complaint. Therefore, any claims or factual allegations not included in the amended complaint will not be before the Court. Plaintiff may not refer to or incorporate by reference his initial complaint. To be clear, the amended complaint must contain all allegations, claims, and exhibits that Plaintiff intends to pursue in this action, including those to be retained from his initial complaint and the attachments thereto.

Plaintiff must write the number of this case (25-3090) at the top of the first page of his amended complaint. He must name every Defendant in the caption of the amended complaint and again in the body of the amended complaint, where he must allege specific facts describing the unconstitutional acts taken by each Defendant including dates, locations, and circumstances. Plaintiff must allege sufficient facts to show that each Defendant personally participated in a federal constitutional violation. For each Count, Plaintiff must clearly identify the constitutional right or rights he believes was violated, he must identify the Defendant or Defendants he believes committed the violation, and he must identify the specific facts that support each alleged violation

by each Defendant.

Plaintiff may attach additional pages to the amended complaint as necessary, but he should number the pages or clearly label them so that the Court and opposing parties can easily understand the relevance of the information therein. If Plaintiff fails to timely file an amended complaint, the Court will proceed on the current complaint, portions of which will be dismissed without further prior notice to Plaintiff for the reasons stated herein. If Plaintiff timely files an amended complaint, the Court will conduct the statutorily required review of the amended complaint and issue further orders as necessary.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including **July 2, 2025**, in which to show cause, in writing, why the portions of this matter identified in this order should not be dismissed for the reasons stated herein. In the alternative, Plaintiff may file, on or before **July 2, 2025,** an amended complaint that cures the deficiencies discussed in this order. If Plaintiff fails to timely respond or file a complete and proper amended complaint, the portions of this matter identified above will be dismissed without prejudice and without further prior notice to Plaintiff. The clerk is directed to provide Plaintiff the court-approved form for an amended complaint.

**IT IS SO ORDERED.**

DATED:  This 2nd day of June, 2025, at Kansas City, Kansas.

S/ John W. Lungstrum  
JOHN W. LUNGSTRUM  
United States District Judge