### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANTHONY TYRONE JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 25-3090-DDC-ADM |
| | ) |
| ALEXANDAR OWENS, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### DEFENDANTS' MOTION TO DISMISS

Defendants Alexandar Owens and Phillip Marley[1] ("Defendants"), respectfully request, through Assistant Attorney General Matthew L. Shoger, that this Court dismiss the claims against them under Fed. R. Civ. P. 12(b)(1) and (b)(6). Defendants state the following in support.

### NATURE OF THE CASE

Plaintiff Anthony Tyrone Jackson alleges that on May 14, 2024 – while Jackson was incarcerated under the Kansas Department of Corrections (KDOC) at El Dorado Correctional Facility (EDCF) – Defendants unconstitutionally subjected him to cruel and unusual punishment by depriving him of basic amenities for 24 hours because he refused to accept a roommate assignment that he considered dangerous (Doc. 1 at 3-6).

Jackson filed this lawsuit on May 12, 2025. (Doc. 1.) He seeks compensatory and punitive damages as well as injunctive relief. (Doc. 1 at 8.) He expressly sued each defendant "in both his official and individual capacities." (Doc. 1 at 1-3.) On screening under the Prison Litigation Reform Act (PLRA), the Court dismissed Counts I and III, defendant Reynolds, and all official-capacity claims, including "requests for injunctive relief, compensatory relief, and

---

[1] Plaintiff misspelled these defendants' names in the Complaint.

money damages from Defendants Owens and Marley in their official capacities." (Doc. 9 at 3; *see also* Doc. 8.) So the only claims that remain before the Court are individual-capacity claims under Count II against Defendants.

Any remaining individual-capacity claims for injunctive relief effectively constitute official-capacity claims, which have already been dismissed. Alternatively, the Court should dismiss any remaining individual-capacity claims for injunctive relief for lack of subject-matter jurisdiction due to lack of standing and due to mootness. The Court should dismiss claims for compensatory damages for failure to state a claim due to lack of a physical injury. The Court should dismiss any remaining claims for failure to state a claim in light of qualified immunity.

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for lack of subject-matter jurisdiction. Jackson, as the party invoking the Court's jurisdiction, bears the burden of showing its existence. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

### *Standard on Motion to Dismiss for Failure to State a Claim*

On a Rule 12(b)(6) motion to dismiss, a court must accept as true all well-pleaded factual allegations in the complaint, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), but a complaint must also contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this

2

"does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Similarly, courts do not assume the role of an advocate for the *pro se* litigant by constructing arguments or searching the record for potentially viable theories. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). And a *pro se* litigant is expected to adhere to the same rules of procedure that govern any other litigant in this circuit. *Id.*

### *Qualified Immunity Standard*

Qualified immunity protects from civil liability government officials whose actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). When a defendant raises the qualified immunity defense, it creates a presumption that the defendant is immune from suit. *Janny v. Gamez*, 8 F.4th 883, 913 (10th Cir. 2021). To overcome this presumption, the burden shifts to the plaintiff to show (1) the defendant's alleged conduct violated a federal statutory or constitutional right, and (2) that right was clearly established at the time of the alleged violation. *Id.* "The court has discretion to decide which of the two prongs of the qualified-immunity analysis to address first." *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The clearly-established right must be clear from applicable case law, *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019), and must be defined with specificity, *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019).

### I. Claims for injunctive under § 1983 cannot be brought against a defendant in their individual capacity.

Claims for declaratory or injunctive relief against government officials, even if phrased as individual capacity claims, are effectively official capacity claims because the "plaintiff seeks to change the behavior of the governmental entity." *DeVargas v. Mason & Hanger-Silas Mason*

3

*Co.*, 844 F.2d 714, 718 (10th Cir. 1988). Accordingly, under § 1983, which necessarily involves actions under the color of state law, "a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1748 (2023).[2]

Here, Jackson cannot bring claims under § 1983 for injunctive relief against the Defendants in their individual capacities. Those claims are effectively official capacity claims. Therefore, to the extent the Complaint may attempt to bring individual-capacity claims for injunctive relief, those claims are really subsumed by the official-capacity claims for injunctive relief, which have already been dismissed (*see* Doc. 9 at 3).

## II. Alternatively, Jackson fails to establish constitutional standing for his claims for injunctive relief due to lack of an injury in fact.

To establish federal subject-matter jurisdiction, plaintiffs must show that they have standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The "irreducible constitutional minimum of standing" contains a triad of requirements: injury in fact, causation, and redressability. *Id*. at 102-03. This triad "constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* at 103-04. And "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). For example, a party may lack standing to bring an injunction even when the party has standing to bring claims for other kinds of relief. *See City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983).

---

[2] *But see Idaho v. Couer d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (in dicta, describing the *Ex Parte Young* exception as applying to "suits seeking declaratory and injunctive relief against state officers in their individual capacities").

The first element of the standing analysis requires that a plaintiff allege and ultimately prove "an 'injury in fact'—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Id.* at 103. Jackson fails to establish an "injury in fact" for the reasons discussed below.

### A. Jackson lacks standing to assert claims for relief on behalf of other persons because their alleged injuries are not his own.

Outside of a class action, a plaintiff must assert injuries to his own constitutional rights and lacks standing to raise claims on behalf of others. *See Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986) (citing *McGowan v. Maryland*, 366 U.S. 420, 429 (1961)). Here, Jackson did not seek to have this case certified as a class action, and it has not been. (*See* Docket; Doc. 1.) Yet in the Complaint, in Jackson's relief requested, he appears to request relief on behalf of other inmates. (Doc. 1 at 8 ("plaintiff request[s] an injunction compelling facility management to stop retail[a]tory placements depriving inmates of basic, fund[a]mental necessities.").) But Plaintiff lacks standing to raise claims on behalf of other inmates.

### B. Jackson lacks standing for injunctive relief due to a lack of an ongoing injury.

"The 'injury in fact' requirement differs depending on whether the plaintiff seeks prospective or retrospective relief." *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014). To recover damages, a form of retroactive relief, it suffices to demonstrate a past harm that is concrete and particularized. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1284, 1290 n.16 (10th Cir. 2004). But "[w]hen prospective relief—such as an injunction—is sought, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Colorado Cross-Disability Coal.*, 765 F.3d at 1211. Here, Jackson only alleges past injuries. So he does not have standing to request injunctive relief.

**III.     Alternatively, Jackson's claims for injunctive relief are moot because he is no longer housed at EDCF.**

Here, as the Court noted in earlier orders in this case, Jackson's claims for injunctive relief are moot because he is no longer housed in EDCF. (Doc. 9 at 1-2; Doc. 8 at 12-13.) He cannot "demonstrate a good chance of being likewise injured by the defendant[s] in the future." *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009); *see also Jordan v. Sosa,* 654 F.3d 1012, 1028 n.17 (10th Cir. 2011) (stating "where a prisoner is no longer housed at the penal institution having the conditions of confinement that form the basis of his suit, declaratory relief—as well as injunctive relief—is ordinarily not available"). Accordingly, to the extent the Court construes Jackson's Complaint as bringing individual-capacity claims for injunctive relief, those claims are moot for the same reasons as for the official-capacity claims for injunctive relief. So they should similarly be dismissed for lack of subject-matter jurisdiction.

**IV.     Jackson is not entitled to compensatory damages under the PLRA when he cannot show physical injury or a sexual act.**

Under the Prison Litigation Reform Act (PLRA), Jackson cannot receive damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Prison Litigation Reform Act, 42 U.S.C. § 1997e(e). Here, Jackson has not alleged a physical injury or the commission of a sexual act, so he cannot receive damages for mental or emotional injury. Therefore, his claims for compensatory damages (Doc. 1 at 8 ("pain and suffering damages")) should be dismissed for failure to state a claim. *See Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001).

**V.     Defendants are entitled to qualified immunity because their alleged actions did not violate clearly established law of which reasonable state officials would have known.**

"After incarceration, only the 'unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S.

312, 319 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Id.* "[W]antonness does not have a fixed meaning but must be determined with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Wilson v. Seiter*, 501 U.S. 294, 302 (1991).

Because the State's responsibility to attend to the basic needs of prisoners such as "adequate food, clothing, shelter, and medical care," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), "does not ordinarily clash with other equally important governmental responsibilities," *see Whitley*, 475 U.S. at 320, the Eighth Amendment's prohibition on cruel and unusual punishment includes an entitlement to a "certain minimum standard" of these basic needs while incarcerated. *See Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018) (citing *Estelle v. Gamble*, 429 U.S. 97, 101-05 & n.6 (1976)). Under normal (that is, non-heightened) circumstances, prison officials violate the Constitution when they act with "deliberate indifference" to an inmate's health or safety. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999) (citing *Seiter*, 501 U.S. at 303). "[I]n that context . . . 'deliberate indifference' would constitute wantonness." *Seiter*, 501 U.S. at 302.

Deliberate indifference has both an objective component and a subjective component. *Estate of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1262 (10th Cir. 2022) (citing *Farmer*, 511 U.S. at 834). For the objective component, the plaintiff must show that a deprivation was "sufficiently serious," resulted "in the denial of the minimal civilized measure of life's necessities," and caused the plaintiff to be "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. "Although what constitutes cruel and unusual punishment under the Eighth Amendment 'must draw its meaning from the evolving standards of decency that

7

mark the progress of a maturing society,' the Constitution 'does not mandate comfortable prisons.'" *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346, 349 (1981)). "To the contrary, jail conditions may be 'restrictive and even harsh' without violating constitutional rights." *Id.* (quoting *Rhodes*, 452 U.S. at 347).

"[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citation omitted). "Life's necessities" means "identifiable human need[s]," *id.* at 304-05, such as "adequate food, clothing, shelter, and medical care," *Farmer*, 511 U.S. at 832. The "circumstances, nature, and duration of the challenged conditions must be carefully considered," and "the length of exposure to the conditions is often of prime importance." *DeSpain*, 264 F.3d at 974. "Although prisoners must receive humane conditions of confinement, mere discomfort or temporary adverse conditions which pose no risk to health and safety do not implicate the Eighth Amendment." *Dittmeyer v. Whetsel*, 91 F. App'x 111, 117 (10th Cir. 2004) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

For example, "there is no doubt that toilets can be unavailable for some period of time without violating the Eighth Amendment." *DeSpain*, 264 F.3d at 974. Accordingly, the Sixth Court has "previously held [in *Stephens v. Carter County Jail*] that deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment." *Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) (citing *Stephens v. Carter Cnty. Jail*, 816 F.2d 682 (table opinion), 1987 WL 36997 at *1 (6th Cir. Apr. 10, 1987)). "While forcing a person in the custody or under the control of state authority to publicly soil themselves may create a constitutional violation, those protections do not extend to mere feelings of discomfort associated with 'having a full bladder.'" *Tate v. Campbell*, 85 F. App'x 413, 417 (6th

Cir. 2003) (citation omitted).

When the unavailability of toilets causes "exposure to human waste," that "carries particular weight in the conditions calculus." *DeSpain*, 264 F.3d at 974. So in cases involving claims of prolonged exposure to human waste, claims have been allowed to proceed. *See id.* (inmate exposed to standing water containing other inmates' urine and feces for 36 hours); *Brooks v. Warden*, 800 F.3d 1295, 1305 (11th Cir. 2015) (inmate forced for a full two days "to lie in direct and extended contact with his own feces without any ability to clean himself, while confined to a hospital bed in maximum security constrain[t]s"); *Fine v. UConn Medical*, No. 3:18-cv-530, 2019 WL 236726, at *7 (D. Conn. Jan. 16, 2019) (inmate left "restrained in urine-soaked clothing and bedding for three days"). But in cases involving claims of brief exposure or no exposure to human waste, claims have lost. *Reynolds v. Wood Cnty.*, No. 22-40381, 2023 WL 3175467, at *5 (5th Cir. May 1, 2023) (inmate sat in his urine in a restraint chair "for just over an hour" before being given a clean uniform and being permitted to shower); *Brown v. Carr*, No. 22-2423, 2023 WL 2931291, at *1 (7th Cir. Apr. 13, 2023) (inmate soiled himself on three occasions because of flooding in his housing unit's restroom and unavailability of an alternative restroom); *Arwood v. Hamblen Cnty. Jail*, No. 2:23-cv-44, 2023 WL 6166527, at *6 to *7 (E.D. Tenn. Sept. 21, 2023) (inmate was unable to use the bathroom for several hours).

Similarly, a brief, isolated incident of missing meals does not rise to the level of a constitutional violation. *Turner v. Warden*, 650 F. App'x 695, 702 (11th Cir. 2016) (finding no violation when inmate "not given any food for a 24-hour period"); *Watkins v. Rogers*, 525 F. App'x 756, 758-59 (10th Cir. 2013) (holding that an inmate having to forego dinner was "not sufficient to demonstrate an Eighth Amendment violation"); *Neal v. McKune*, No. 11-3155-JTM, 2013 WL 1446791, at *5 (D. Kan. Apr. 9, 2013) (finding no constitutional violation under the

9

First Amendment's free exercise clause when an inmate allegedly missed three meals and was hurried during six others over the course of two Ramadan months); *Moore v. Liewert*, No. 22-2056, 2023 WL 8378827, at *3 (6th Cir. Aug. 16, 2023) (collecting cases and finding "the denial of a single meal" to be "a de minimis event" in the context of a First-Amendment retaliation claim); *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) (holding for purposes of an Eighth-Amendment claim that "[t]he purported deprivation of a single meal is not of such a magnitude as to rise to the level of a constitutional violation"); *Romero v. Lann*, 305 F. App'x 242, 243 (5th Cir. 2008) (holding for purposes of an Eighth-Amendment claim that "the denial of two meals over an eight month period" was "de minimis").

Access to bedding for a short period of time is also a de minimis injury that does not rise to the level of a constitutional violation. In the *Stephens* case, the plaintiff also lacked sheets, a blanket, and a bed for 20 hours, but the Sixth Circuit held that did not rise to the level of a constitutional violation. *Stephens*, 1987 WL 36997 at *1. Other cases have held similarly. *See Rucker v. Gilmore*, No. 13-CV-3028, 2015 WL 506210, at *7 (D. Kan. Feb. 6, 2015) (inmate "had to sleep on a soiled mattress (or the floor) for six days"); *Ballard v. Geo Grp., Inc.*, No. 10-886, 2013 WL 12080964, at *9 (D.N.M. May 29, 2013) (inmate kept overnight in a cell with no bed or chair), *report and recommendation adopted*, 2013 WL 12086305, at *4 (D.N.M. July 11, 2013); *Palmer v. Romer*, 1999 U.S. Dist. LEXIS 20138 (D. Colo.) (as quoted in *Maxwell*, 2003 WL 27385120, at *3) (inmate "gives no indication that he suffered any significantly serious harm or deprivation as a result of . . . the fact that he was required to eat and sleep on the floor").

The subjective component of deliberate indifference requires showing that the official had a culpable state of mind. *Beauford*, 35 F.4th at 1262 (citing *Farmer*, 511 U.S. at 834). This is only met if "the official knows of and disregards an excessive risk to inmate health or safety; the

10

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Even if both the objective and subjective prongs are met, "a constitutionally legitimate justification" may still be shown. *Arocho v. Nafziger*, 367 F. App'x 942, 952 (10th Cir. 2010); *see also Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994) ("A total or near-total deprivation of exercise or recreational opportunity, *without penological justification*, violates Eighth Amendment guarantees." (emphasis added)), *abrogated on other grounds as recognized by Tucker v. Graves*, 107 F.3d 881 (table opinion), 1997 WL 100884, at *1 n.2 (10th Cir. Mar. 6, 1997). This should be determined, not with the benefit of hindsight, but based on what the official reasonably knew at the time. *See Strain v. Regalado*, 977 F.3d 984, 996 (10th Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (saying in the context of the deliberate-indifference standard that "courts do not judge the constitutionality of particular actions 'with the 20/20 vision of hindsight'").

Here, Jackson had access to a toilet in his assigned cell but he chose not to use it for what he alleges were safety concerns. Similarly to the *Stephens* case (where no violation was found), Jackson alleges that this means he was deprived of a toilet for about 24 hours. *See Hartsfield*, 199 F.3d at 310 (citing *Stephens*, 816 F.2d at 682). As in *Stephens*, even if this means he was effectively deprived of access to a toilet for those 24 hours, constitutional protections do not extend to "mere feelings of discomfort associated with 'having a full bladder.'" *Tate*, 85 F. App'x at 417. Further, Jackson alleges that he was able to "hold his bodily waste." So he was not exposed to human waste at all, unlike the prolonged exposure to human waste in the *DeSpain*, *Brooks*, *Fine*, and *Phillips* cases. Therefore, his alleged lack of access to a toilet does not rise to the level necessary to satisfy the objective prong of the deliberate indifference test.

Jackson's allegations of being deprived of water for 24 hours is not substantially different than the allegations in the *Stephens* case of being deprived of water for 20 hours (where no violation was found). Jackson's allegations of missing meals for 24 hours is the same allegation as in *Turner* (where no violation was found). Jackson's allegation of having to sleep on the floor is the same as in *Stephens*, *Rucker*, *Ballard*, and *Palmer* (where no violation was found).

Accordingly, Defendants' alleged actions do not rise to the level of a constitutional violation. Alternatively, no clearly established law would have put Defendants on notice that their actions were unlawful under these circumstances. So Defendants are entitled to qualified immunity as a matter of law. Therefore, Count II (the only remaining count) against Defendants should be dismissed for failure to state a claim.

## CONCLUSION

For these reasons, Defendants request that any remaining individual-capacity claims for injunctive relief be dismissed for lack of subject-matter jurisdiction due to lack of standing and due to mootness. Defendants request that Jackson's claims for compensatory damages be dismissed for failure to state a claim due to lack of a physical injury. And Defendants request that the Court dismiss the remaining claims against them for failure to state a claim in light of qualified immunity.

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

       I hereby certify that on this 21st day of October, 2025, the foregoing document was filed with the clerk of the court by using the CM/ECF system, with a copy to be served on October 22, 2025, by means of first-class mail, postage prepaid, addressed to:

       Anthony Tyrone Jackson #77685
       Lansing Correctional Facility
       P.O. Box 2
       Lansing, KS 66043
       *Plaintiff, pro se*

       */s/ Matthew L. Shoger*
       Matthew L. Shoger
       Assistant Attorney General